**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| |
|---|
| ROBERTO RODRIGUEZ ROSARIO, *et al.*,<br><br>    **Plaintiffs,**<br><br>           **v.**<br><br>SYNTEX (F.P.), INC., *et als.*,<br><br>    **Defendants.** |

**CIVIL NO.** 11-1376 (FAB)

## OPINION AND ORDER[1]

BESOSA, District Judge.

Before the Court is plaintiffs' amended motion to remand this case to the Puerto Rico Court of First Instance, Humacao Superior Division (Docket No. 16), and defendants Syntex (F.P.), Inc.'s and Syntex Puerto Rico, Inc.'s ("Syntex") opposition to the motion to remand.  (Docket No. 20.)  For the reasons set forth below, plaintiffs' amended motion to remand is **GRANTED.**

### DISCUSSION

**I.  Background**

    **A.  Facts**

Roberto Rodriguez-Rosario, Ramon Gonzalez-Ortiz, Leocadio Rivera-Velazquez, and Jose Ramon Santiago-Ortiz ("plaintiffs") allege that on or about November 14, 1996, Syntex notified them

---

[1] Elizabeth Gray, a second-year student at the University of New Hampshire Law School, assisted in the preparation of this Opinion and Order.

that the company was closing the plant in which they were employed.
(Docket No. 12-1 at p. 1, ¶ 3.)  Syntex informed its employees that
an enhanced severance payment would be available if they remained
in their positions while the company diminished operations.  (Id.)
Employees received a memo which detailed how the severance pay
would be calculated.  (Id. at p. 2, ¶ 3.)  The memo also mentioned
that employees would be required to sign a document to release the
company from "all claim" [sic].  (Id.)  On or about July 30, 1999,
the plaintiffs received the release document.  (Id. at p. 2, ¶ 5.)
The plaintiffs refused to sign the document because they did not
want to waive their rights in a separate pending lawsuit against
Syntex.  (Id.)  The plaintiffs were laid off on July 31, 1999, and
have not received payment from Syntex.  (Id.)

   B.   **Procedural History**

        On September 20, 1999, plaintiffs sued Syntex pursuant to
Puerto Rico law in the Puerto Rico Court of First Instance, Humacao
Superior Division (Civil No. HSCI2005-00911) for Syntex's alleged
failure to perform under the terms of the Syntex Severance Pay Plan
("Syntex Plan").  (Docket No. 1-6.)  On March 15, 2011, the
plaintiffs filed an Informative Motion and Request for Order in
state court, requesting an interpretation of the Syntex Plan.
(Docket No. 12-5.)  On April 20, 2011, Syntex removed the case to
this forum, arguing that the Syntex Plan is an "employee welfare
benefit plan" covered by the Employee Retirement Income Security

Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and as such, the plaintiffs' cause of action amounts to a claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B).  (Docket No. 1 at pp. 3-5.)  Syntex asserts that this Court has concurrent jurisdiction and that removal was therefore proper.  (Id. at 3.)

Subsequently, plaintiffs moved to remand the case to the Puerto Rico Court of First Instance, Humacao Superior Division on June 17, 2011.  (Docket No. 17.)  They argue that the Syntex Plan is not an ERISA plan because:  (1) it does not require "continuous administrative and financial obligations" by the employer and (2) it lacks "management discretion as to the eligibility of participants."  (Docket No. 16 at pp. 5-6.)  Plaintiffs also argue that:  (1) ERISA's preemption is limited in this instance, (2) there was a "serious defect" in Syntex's Notice of Removal, (3) Syntex delayed filing its Notice of Removal, and (4) removal is barred due to *res judicata*.  (Docket No. 16 at pp. 3-8.)

On July 5, 2011, Syntex filed an opposition to plaintiffs' motion to remand, responding that (1) failure to notify the Court of a previous case removed and subsequently remanded does not constitute a defect under 28 U.S.C. § 1447(c), (2) their Notice of Removal was filed in a timely manner, (3) *res judicata* does not preclude the removal of the case, and (4) the Syntex Plan is an ERISA covered plan.  (Docket No. 20 at pp. 2-4.)  The Court will address each argument in turn.

## II.  Standards

### A.  Removal

Removal of a case to federal court is allowed if a defendant can "make a 'colorable' showing that a basis for federal jurisdiction exists." Danca v. Private Health Care Sys., 185 F.3d 1, 4 (1st Cir. 1999) (citing BIW Deceived v. Local S6, 132 F.3d 824, 831 (1st Cir. 1997)).  One such instance occurs when the plaintiff could have originally filed the action in federal court. 28 U.S.C. § 1441.  Uncertainty in the source of law should be "resolved against removal." See Rossello-Gonzalez v. Calderon-Serra, 398 F.3d 1, 11 (1st Cir. 2004) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941)).

### B.  Federal Question Jurisdiction and Preemption

"Federal question" jurisdiction exists in cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  The "federal question" must exist on the face of the plaintiff's complaint. See Rossello-Gonzalez, 398 F.3d at 10. Known as the "well-pleaded complaint" rule, courts must determine if the "plaintiff's claim to relief rests upon a federal right" based solely upon their complaint. Id. (quoting Hernandez-Agosto v. Romero-Barcelo, 748 F.2d 1, 2 (1st Cir. 1984) (emphasis in original); see Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 64-65 (1987).

An exception to the "well-pleaded complaint" rule arises when "Congress [] completely preempt[s] a particular area [of law] such that any civil complaint raising this select group of claims is necessarily federal in character." Metro. Life Ins. Co., 481 U.S. at 63-64. The "complete preemption" doctrine allows courts to determine if a plaintiff has merely posed a "federal claim under state-law colors." BIW Deceived, 132 F.3d at 831 (citing Federated Dep't. Stores, Inc. v. Moitie, 452 U.S. 394, 397 (1981)). Thus, a plaintiff may not sidestep an appropriate removal by using an "artful pleading" to present his or her claim based only on state law. Id.

**C.   ERISA Provisions**

ERISA falls into the category of federal statutes Congress intended to preempt state-law claims. See Aetna Health Inc. v. Davila, 542 U.S. 200, 208-09 (2004). Congress enacted ERISA to protect both employers and employees alike. See Fort Halifax v. Coyne, 482 U.S. 1, 11 (1987); New England Mut. Life Ins. Co. v. Baig, 166 F.3d 1, 3 (1st Cir. 1999). ERISA alleviates the administrative burden associated with "employee benefit plans" by providing a "uniform set of administrative procedures governed by a single set of regulations." Fort Halifax, 482 U.S. at 11. Those regulations "safeguard employee interests by reducing the threat of abuse or mismanagement of funds." O'Connor v. Commw. Gas Co., 251

F.3d 262, 266 (1st Cir. 2001) (citing Mass. v. Morash, 490 U.S. 107, 115 (1989) (internal quotation omitted).

To reach its objectives, Congress made ERISA's preemption provisions far-reaching to "ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" Aetna Health Inc., 542 U.S. at 208 (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981)); see ERISA § 514, 29 U.S.C. § 1144. ERISA's preemption provisions can reach a state law that simply "'relate[s] to' an ERISA covered welfare benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a); Combined Mgmt. v. Superintendent of the Bureau of Ins., 22 F.3d 1, 3 (1st Cir. 1994).[2]  The statute considers "state laws" as "all laws, decision, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1). The statute includes Puerto Rico in its definition of "state." 29 U.S.C. § 1002(10).

The civil-enforcement provision of ERISA enforces the "expansive preemption provisions of the statute." Aetna Health Inc., 542 U.S. at 208-09; see ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). The provision provides that "a plan participant

---

[2] Section 514(a) provides in pertinent part that ERISA:

  Shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a).

or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits." 29 U.S.C. § 1132(a)(1)(B). Available relief includes "accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 53 (1987).

A state law which serves as an "alternative enforcement mechanism" of the civil-enforcement provision will warrant complete preemption. Danca, 185 F.3d at 5. The state law must have a connection to an ERISA plan which is not merely "tenuous, remote, or peripheral." Combined Mgmt., 22 F.3d at 3 (internal citations omitted).

For preemption purposes under ERISA, the Court must undertake a two-part analysis. First, the Court must determine if the purported plan is "an employee benefit plan" within the scope of ERISA. Rosario-Cordero v. Crowley Towing & Transp. Co., 43 F.3d 120, 124 (1st Cir. 1995). Plans that pay severance benefits are included in ERISA's definition of an "employee benefit plan." 29 U.S.C. § 1002; see Fort Halifax, 482 U.S. at 7, n. 5. Second, the Court must determine whether the claim relates to the plan. Rosario, 46 F.3d at 124. If both inquiries are affirmative, the plaintiff's claims are preempted by ERISA. Colon-Rodriguez v. Astra-Zeneca Pharms., LP, No. 11-1495, 2011 U.S. Dist. LEXIS

143239, at *10 (D.P.R. Dec. 13, 2011) (Besosa, J.) (citing <u>Galindez</u> <u>v. Ortho Pharm.</u>, 328 F. Supp. 2d 213, 231 (D.P.R. 2004) (internal citations omitted)).

The parties do not dispute whether the Syntex Plan was properly accepted.  The plaintiffs concede that although they did not sign the Syntex Plan and waiver, they accepted the Syntex Plan by adhering to the conditions of the offer that was made in writing on November 14, 1996.  (<u>See</u> Docket No. 12-1 at p. 3.)  Thus, because plaintiffs concede they accepted the Syntex Plan, removal to federal court was proper if (1) the Syntex Plan is an employee benefit plan within the scope of ERISA and (2) the plaintiffs' claim relates to the Syntex Plan.  <u>See</u> <u>Metro. Life</u>, 481 U.S. at 66-67.  The Court now turns to the question of whether the Syntex Plan is an ERISA employee benefit plan.

## III. Discussion

### A.    ERISA COVERAGE

<u>Fort Halifax</u> remains the seminal case in determining whether a plan is an employee benefit plan within the scope of ERISA.  <u>Rodowicz v. Mass. Mut. Life Ins. Co.</u>, 192 F.3d 162, 170 (1st Cir. 1999).  The <u>Fort Halifax</u> court, however, did not provide a specific set of criteria to determine ERISA eligibility of a plan, and as a result, the determination is one based on degrees. <u>See</u> <u>O'Connor</u>, 251 F.3d at 267 (citing <u>Simas v. Quaker Fabric Corp.</u>, 6 F.3d 849, 853 (1st Cir. 1993) ("It is a matter of degrees but

under Fort Halifax degrees are crucial.")).  The Court will first determine if the Syntex Plan imposed a "continuous administrative and financial obligation[]" upon Syntex.  Then the Court will consider if the Syntex Plan lacks "management discretion as to the eligibility of participants."  Finally, the Court will examine Syntex's intent to create an ERISA-covered plan.  The First Circuit Court of Appeals has acknowledged that a Fort Halifax analysis will require line drawing and "close cases will approach the line from both sides."  Simas, 6 F.3d at 854.

> **1.    The Syntex Plan does not require continuous and administrative financial obligations**

The plaintiffs first argue that the Syntex Plan did not have the "continuous administrative and financial obligations" required of an ERISA plan.  (Docket No. 16 at pp. 5-6.)  Syntex responds that an ongoing administrative scheme is present because the severance payment could be received in installments over time.  (Docket No. 20 at p. 9.)  The "nature and extent of an employer's benefit obligations" examines if there is an "undertaking of continuing administrative and financial obligations" which benefit the employee.  See Belanger v. Wyman-Gordon Co., 71 F.3d 451, 454 (1st Cir. 1993) (citing Fort Halifax, 482 U.S. at 12) (holding that a severance payment made as a "one-time, lump-sum payment" did not create the need for an administrative operation).  The Fort Halifax court reasoned that a solitary severance payment conditioned on the closing of a plant amounted to "little more than writ[ing] a

check."   482 U.S. at 11.  A benefit which involves a "one-shot,
take-it-or-leave-it  incentive"  reduces  the  need  for  ERISA
supervision.  O'Connor, 251 F.3d at 267.  The severance payment in
the Syntex Plan is such a benefit.  See O'Connor, 251 F.3d at 267.
The Syntex Plan is analogous to the Fort Halifax plan because
neither payment required the administration of a plan.  See 482
U.S. at 12.  Here, the lump-sum payment option is triggered solely
by the closing of the plant.  (Docket No. 1-6.)  As such, Syntex
does not undertake a "responsibility to pay benefits on a regular
basis, and thus faces no assets that create a need for financial
coordination and control."  See Fort Halifax, 482 U.S. at 12.

          Syntex argues that an employee's ability to receive
payments  in  installments  is  indicative  of  an  "ongoing
administrative scheme."  (Docket No. 20 at pp. 8-9.)  This Court
has previously held, however, that a plan which provided payments
to employees for over three months and up to one year was not a
continuing administration.  Melendez v. Wyeth Pharms. Co., No. 09-
1353, 2009 U.S. Dist. LEXIS 84721, at *2-*3 (D.P.R. Sept. 16,
2009); (Docket No. 14-7) (the "scheduling of payments does not
evoke Congress' purpose in establishing ERISA's protections."); see
also Wells v. General Motors Corp., 881 F.2d 166, 176 (5th Cir.
1989) (finding that an early-retirement incentive program where
payment could be made in installments over a two-year period was
not ongoing and there was no need for continuing administration).

Next, Syntex argues that the Managing Director's duty to maintain records related to the Syntex Plan and the detailed claim procedure outlined by the Syntex Plan necessitate an "ongoing administrative scheme." (Docket No. 20 at p. 9.) The Massachusetts district court's finding that a "company's ongoing commitment to plan participants, not the amount of short-term paperwork" was essential in demonstrating a plan's administrative burden, was upheld by the First Circuit Court of Appeals. Rodowicz v. Mass. Mut. Life Ins. Co., 915 F. Supp. 486, 489 (D. Mass. 1996); see also Rodowicz, 192 F.3d at 171. Accordingly, the Syntex Plan's "one-shot, take-it-or-leave-it" administrative scheme, not the Managing Director's routine administrative duties, is the relevant focus. See O'Connor, 251 F.3d at 267; Rodowicz, 915 F. Supp. at 489. Therefore, because the Syntex Plan is triggered by the one-time event of the closing of the plant, it does not create "continuous administrative and financial obligations" for the defendants.

**2.   The Syntex Plan lacks management discretion as to the eligibility of participants**

The plaintiffs also argue that the Syntex Plan lacks "management discretion as to the eligibility of participants." (Docket No. 16 at p. 6.) Specifically, the plaintiffs assert that the eligibility criteria only requires employees to remain in their positions until their termination date and sign a release. (Id.) Syntex counters that language in the Syntex Plan specifically

provides that a Managing Director has full discretion to determine if an employee meets the eligibility criteria of the Syntex Plan. (Docket No. 20 at pp. 8-9.)  Syntex also asserts that the detailed claim procedure and appeals process require individual determinations and discretion.  (Id.)

　　　　If a plan calls for eligibility determinations with "non-mechanical, subjective criteria," the possibility of mismanagement increases the need for ERISA.  O'Connor, 251 F.3d at 268.  For that reason, the level of discretion the employer uses in administering the plan is an important factor.  Id. at 267.  The severance plan at issue in Rodowicz is almost identical to the Syntex Plan.  See 192 F.3d at 171-72.  In Rodowicz, the Voluntary Termination Program ("VTP") was (1) open to most of the company's employees, (2) provided a one-time, lump sum severance payment based on years of service, (3) contained an appeals procedure for denied employees, and (4) allowed the VTP administrator to exclude "involuntarily terminated" employees "for any reason or no reason at all."  Id.  The Rodowicz court held that the VTP did not constitute an ERISA covered plan.  Id. at 172.

　　　　The Syntex Plan states that in order to qualify, employees need only:  (1) be terminated due to the closing of operations in Puerto Rico, (2) sign an Agreement and Release and Payment Option Form, and (3) remain with the company until they are terminated.  (Docket No. 1-6 at p. 4.)  The Syntex Plan excludes

employees who are "terminated for any other reason, including disciplinary or performance reasons." (Id. at 5.) The Syntex Plan defines an "employee" as a "regular, full-time employee, or a regular, part-time employee." (Id. at 2.) It also provides that the Managing Director has "full discretionary authority to administer and interpret this Plan, determine eligibility for Severance Pay benefits, and maintain records." (Id. at 7.)

Eligibility criteria for the Syntex Plan is mechanical and objective. (Docket No. 1-6 at pp. 4-5.) Similar to the early retirement plan in Rodowicz, the Syntex Plan was open to most full-time employees with limited, straightforward exclusions. See Rodowicz, 192 F.3d at 171 (finding that plan which had exclusions was "somewhat less mechanical and unthinking" but did not require "individualized determinations"); (Docket No. 1-6 at p. 4.) Additionally, the calculation of the benefits for the Syntex Plan does not require managerial discretion. (Docket No. 1-6 at p. 5.) Although the benefit payment amount is based on a years-of-service calculation, which requires individual determinations, only "simple arithmetic" is needed to determine the payment amount. O'Connor, 251 F.3d at 268 (reasoning that individualized determinations do not automatically mean ERISA coverage); Belanger, 71 F.3d at 455 (plan with "purely mechanical determination of eligibility" which "required no complicated administrative apparatus either to calculate or to distribute" the

benefit did not implicate ERISA); see also James v. Fleet/Norstar
Fin. Grp., 992 F.2d 463, 467 (2d Cir. 1993) (finding that payments
made to employees with different termination dates and eligibility
criteria required only "simple arithmetical calculations.")

        Furthermore, even though the Managing Director has
full discretion to make exclusions and administer the Syntex Plan
and appeals process, it does not reach the level of individualized
determinations indicative of an ERISA-covered plan.  See Rodowicz,
192 F.3d at 172 (finding that a plan which allowed "exclusions and
deferrals, as well as appeals by disappointed employees", did not
reach level of "ongoing, individualized determinations present in
an ERISA plan.)  Moreover, the Rodowicz plan administrator's
discretion to "exclude all employees who had been terminated 'for
any reason or no reason at all'" did not reach the requisite level
because the determination did not require a "careful assessment of
cause."  Id. at 171.  By contrast, in Simas, to determine
eligibility  and  assess  disputed  terminations,  the  plan
administrator had to cross-reference state law requirements and
determine if the discharge was "for cause."  6 F.3d at 853.  The
Simas court reasoned that the "for cause" determination required
the subjective discretion of the employer, thus evoking the need
for ERISA coverage.  Id. at 853-54.  Consequently, because the
Syntex Plan gives the Managing Director full discretion in both the
appeals process and in excluding employees who are "terminated for

any other reason," the Managing Director's determination does not require sufficient "individualized determination[s]" because there is "no careful assessment of 'cause'."  See Rodowicz, 192 F.3d at 172; (Docket No. 1-6 at pp. 5, 8-9.)

          The Syntex Plan lacks managerial discretion as to eligibility because:  (1) the Syntex Plan was open to most employees with limited, straightforward exclusions, (2) calculation of the benefits was mechanical, and (3) the Managing Director's full discretion to make exclusions and administer the appeals process did not reach the level of individualized determinations and subjective assessment of cause, as required by the First Circuit Court of Appeals in Simas.

          **3.  Syntex did not intend to create an ERISA Plan**

          An employer's intent has been characterized as "the crucial factor in determining if a 'plan' has been established." O'Connor, 251 F.3d at 272 (citing Wickman v. Northwestern Nat'l. Ins. Co., 908 F.2d 1077, 1083 (1st Cir. 1990).  Less weight is given to those intentions when evidence of contrary intent is present.  Id.  The Syntex Plan provides that the Director and the Board are "Named Fiduciary as that term is used in the Employee Retirement Income Security Act of 1974 . . . " (Docket No. 1-6 at p. 8.)  Several pages later, however, the Syntex Plan provides that "nothing contained in the Plan nor any action taken hereunder shall create, or be construed to create a trust of any kind, or a

*fiduciary relationship* between the Company or an Employer and Members or any other persons." (Id. at 11.) (emphasis added). Thus Syntex's "ambiguous intent [] [does] not outweigh the non-ERISA nature of the severance provision." O'Connor, 251 F.3d at 272.

**B.   Relation of Plaintiffs' Claim to the Syntex Plan**

Having determined that the Syntex Plan is not an employee benefit plan within the scope of ERISA, the Court finds it unnecessary to determine whether the plaintiffs' claim relates to the Syntex Plan.

**C.   Supplementary Arguments**

Lastly, the plaintiffs argue that (1) ERISA's preemption is limited in this instance, (2) there was a "serious defect" in the Syntex's Notice of Removal, (3) Syntex delayed filing its Notice of Removal, and (4) removal is barred due to *res judicata*. (Docket No. 16 at pp. 3-8.) Because the Court holds that the Syntex Plan is not an ERISA covered plan, there is no reason to consider those arguments.

**IV.  CONCLUSION**

The Syntex Plan is not an employee benefit plan within the scope of ERISA because it does not (1) require continuous administrative and financial obligations, and (2) lacks management discretion as to the eligibility of participants.

For the reasons expressed, the Court **GRANTS** plaintiffs' motion to remand to state court.  This case is remanded to the Court of First Instance of Puerto Rico, Humacao Superior Division.  Judgment shall be entered accordingly.

   **IT IS SO ORDERED.**

San Juan, Puerto Rico, February 9, 2012.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              UNITED STATES DISTRICT JUDGE